# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

RICHARD ALAN FARMER,

      *Plaintiff*,

v.                          Case No. 4:15cv335-MW/CAS

RICHARD L. SWEARINGEN, IN HIS
OFFICIAL CAPACITY, AND THE
FLORIDA DEPARTMENT OF LAW
ENFORCEMENT,

      *Defendants*.

_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Does a state's refusal to remove a registered sex offender who has subsequently moved out of the state from its sex offender website violate constitutional equal protection and due process? This Court finds that the answer is no.

In this action, brought under 42 U.S.C. §1983, Plaintiff Richard Alan Farmer seeks declaratory and injunctive relief against The Florida Department of Law Enforcement ("FDLE") and FDLE Commissioner Richard L. Swearingen in his official capacity.[1]

---

[1] The FDLE and Swearingen, acting in his official capacity, are frequently referred to collectively in this order as "the FDLE."

Farmer was convicted of sex offenses in Alabama in 1992 and, pursuant to Florida law, registered in Florida as a sex offender after he moved to Florida. He has since moved out of Florida and is now a resident of the Bahamas. He asked the FDLE to remove him from the sex offender registry, but it refused to do so. Farmer has sued to compel it to remove him, arguing that its refusal to do so and the Florida statutes allowing it to so refuse violate his constitutional rights to due process and equal protection.

This Court has considered, without hearing, Plaintiff's Motion for Summary Judgment, ECF No. 30, and Defendants' Motion for Summary Judgment, ECF No. 31. After a thorough review of the record and the parties' filings, this Court finds as a matter of law that the FDLE's refusal to remove Farmer from the sex offender registry did not violate Farmer's due process or equal protection rights because the FDLE had a rational basis for its decision. The FDLE's motion for summary judgment is therefore granted, and Farmer's motion for summary judgment is denied.

I

This Court accepts the facts in the light most favorable to the non-movant. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008). All reasonable doubts about the facts shall be resolved

2

in favor of the non-movant. *Id.* The standards governing cross-motions for summary judgment are the same, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the non-movant. *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1404 (S.D. Fla. 2014) (citations omitted).

## A

Florida requires all "sexual offenders" who reside in Florida to register with their local sheriff's office and periodically provide current personal information. §943.0435(2), (3), (4), (14), Fla. Stat. (2015). The law requires registration by "permanent," "temporary," and "transient" residents, who collectively include individuals who are in Florida for five or more days in a given year. *Id.* §943.0435(1)(C) (cross-referencing §775.21). The FDLE makes information publicly available through the Internet. *Id.* §943.043.

A "sexual offender" is defined as, among other things, one who

> Establishes or maintains a residence in this state and who has not been designated as a sexual predator by a court of this state but who has been designated as a sexual predator, as a sexually violent predator, or by another sexual offender designation in another state or jurisdiction and was, as a re-

sult of such designation, subjected to registration or community or public notification, or both, or would be if the person were a resident of that state or jurisdiction, without regard to whether the person otherwise meets the criteria for registration as a sexual offender.

*Id.* §943.0435(1)(a)1.b.

## B

Plaintiff Richard Alan Farmer pled guilty to two counts of rape in the second degree and two counts of sodomy in the second degree in Alabama in 1992. ECF No. 32-1, at 8–9. He was required on account of his crimes to register for life as sex offender in Alabama. ECF No. 32-2, at 93.

After Farmer moved to Florida, he registered as a sex offender with the FDLE on October 15, 2009, listing a Destin, Florida, address as his primary residence. ECF No. 32-1, at 43–44, 123–28.[2]

On October 30, 2009, Farmer updated his information with the state of Florida, stating that his new address was in the Bahamas. *Id.* at 40–41, 117–22. In 2011 Farmer moved to the Bahamas.

---

[2] Farmer objected to inquiries regarding when he moved to Florida multiple times on Fifth Amendment grounds. *See, e.g.*, ECF No. 32-1, at 43–44. The particulars of Farmer's move are not relevant; it is only relevant that at some point Farmer was a resident of Florida and registered in Florida as a sex offender as required by Florida law.

*Id.* at 75.

When Farmer asked the FDLE to remove him from the sex offender registry website because he had moved to a different state, the FDLE refused to do so. ECF No. 33-2, at 6–9. The FDLE maintains that once Farmer moved to another jurisdiction, he was not under any further obligation to continue to update his registration until he established a new residence in Florida. *See* ECF No. 32-2, at 7; §943.0435(1)(c), Fla. Stat. (2015). However, it refused to remove his *existing* registration from its database or website.

Farmer filed suit pursuant to 42 U.S.C. §1983, asking this Court to declare that the FDLE's action in refusing to remove him from the website is unconstitutional and require the FDLE to so remove him. He alleges that the action violates substantive due process (Count I), procedural due process (Count II), and equal protection (Count III). He named both the FDLE and Richard L. Swearingen, in his official capacity as FDLE commissioner, as Defendants. This Court previously dismissed all claims against the FDLE. ECF No. 37.

Both sides now move for summary judgment.[3]

## II

Farmer argues that the FDLE's refusal to remove him from the sex offender registry violates his rights under both the federal and Florida constitutions to both equal protection and substantive due process because the FDLE has no rational basis for its actions.[4] He challenges the constitutionality of §943.0435, Florida Statutes, as it has been applied to him by the FDLE.[5]

---

[3] Defendant also filed a motion to dismiss, ECF No. 7. This Court granted the motion in part, ECF No. 37, but deferred ruling on the remainder of the motion. Because the motions for summary judgment are now ripe for review, the best course is to deny the motion as moot. This Court, in considering the cross motions for summary judgment, has reviewed the substance of the parties' briefs on the motion to dismiss.

[4] Neither party points to any meaningful distinction in federal and Florida constitutional law as they relate to Farmer's claims. This Court assumes, the absence of any suggestion to the contrary, that the standards are substantially identical.

[5] The odd procedural posture of this case is not lost on this Court. Farmer, in essence, seeks judicial review of a decision by the FDLE—a Florida agency. Florida statutes arguably do not, by their plain language, compel the FDLE to take the position that it has, nor has the FDLE promulgated any rule or other policy statement formally announcing its position. Normally, agency decisions are reviewable under applicable federal and state statutes providing for judicial review of such decisions. *See, e.g.*, §120.68, Fla. Stat. (2015). However, neither party has raised this issue.

A

The Equal Protection Clause requires the government to treat similarly situated persons in a similar manner. *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). Equal protection jurisprudence is typically concerned with governmental classification and treatment that affects some discrete and identifiable group of citizens differently from other groups. *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012). Where a plaintiff is not being treated differently on the basis of race or some other suspect classification, and if the law is not alleged to impinge any fundamental right, the law need only have a rational basis—the classification need only be rationally related to a legitimate government purpose. *Leib*, 558 F.3d at 1306 (11th Cir. 2009).[6]

In general, the substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are implicit in the concept of ordered liberty. *Lewis v. Brown*, 409 F.3d 1271, 1272 (11th Cir. 2005) (citations and quotations omitted). However, where an individual's state-created rights are

---

[6] Both sides appear to agree that no protected class or fundamental rights are implicated, and that rational basis review applies.

infringed by a "legislative act," the substantive component of the Due Process Clause generally protects him from arbitrary and irrational action by the government. *Id.* at 1273.[7] Substantive due process challenges to legislative acts that do not implicate fundamental rights are reviewed under the rational basis standard. *Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014).

Thus for Farmer's equal protection and substantive due process claims, the same rational basis review applies.[8] The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it. *Leib*, 558 F.3d at 1306. A state has no obligation to produce evidence to sustain the rationality of a regulatory classification; rather, a regulation is presumed constitutional, and the burden is on the one attacking the law to

---

[7] "Legislative acts . . . generally apply to larger segments of—if not all of—society; laws and broad-ranging executive regulations are the most common examples." *Lewis*, 409 F.3d at 1273 (citations and quotations omitted).

[8] The standard is "virtually identical" in both the substantive due process and equal protection contexts. *See In re Wood*, 866 F.2d 1367, 1371 (11th Cir. 1989). *See also Cook v. Bennett*, 792 F.3d 1294, 1301 (11th Cir. 2015) ("Rational basis review in the context of equal protection is essentially equivalent to rational basis review in the context of due process.").

negate every conceivable basis that might support it, even if that basis has no foundation in the record. *Id.* A court must accept a legislature's generalizations even when there is an imperfect fit between means and ends. *Id.* A law need not be sensible to pass rational basis review; rather, it may be based on rational speculation unsupported by evidence or empirical data. *Cook v. Bennett*, 792 F.3d 1294, 1300 (11th Cir. 2015) (citations and quotations omitted). A legislative action survives rational basis review even if it seems unwise or if the rationale for it seems tenuous. *Id.* (citations and quotations omitted). Almost every legislative action subject to the very deferential rational basis scrutiny standard is found to be constitutional. *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001).

Other courts have routinely found that laws mandating sex offender registries, including §943.0435, survive rational basis review. *See, e.g.*, *Doe v. Moore*, 410 F.3d 1337, 1339–40 (11th Cir. 2005) (finding that "Florida's sex offender registration/notification scheme" meets the rational basis standard); *Miller v. State*, 971 So. 2d 951, 954–55 (Fla. 5th DCA 2007) (noting that Florida had a rational basis to include in its definition of "sexual offender" Florida residents who have been designated sexual offenders by another

state); *accord* 42 U.S.C. §16901 *et seq.* (establishing comprehensive national system for registration of sex offenders).

B

Farmer claims that as a non-resident of Florida, he is similarly situated to all other non-resident sex offenders. ECF No. 30, at 3. Farmer argues that "[t]he only distinction between [him] and [such] out-of-state sex offenders who are not registered in Florida is that [Farmer] once resided in Florida. [Farmer] having once resided in Florida is not a rational basis for treating [Farmer] differently [than] those out-of-state sex offenders registered in other states who are not registered in Florida." *Id.* In other words, Farmer argues that leaving his name on the registry is irrational given that Florida wouldn't list a sex offender in, say, Vermont who had never had a connection with Florida. The relevant class he belongs to under this theory is the class of people who once had to register as sex offenders in Florida who now live outside the state. The question, phrased in equal protection terms, is this: is there a rational basis for distinguishing between former residents of Florida—that, is people who once had to register as sex offenders in Florida—and people who have never had to register as sex offenders in Florida? In substantive due process terms, the question is

whether it makes any sense to leave sex offenders listed on the registry and website once they move out of the state.

This Court will assume for purposes of this analysis that FDLE's decision to leave Farmer on the registry flows from a legislative act—that is, the decision to leave offenders on the list after they move out of the state applies to all people in Farmer's position, and is a matter of policy. Regardless of whether Farmer's challenge to this policy is based on equal protection or substantive due process, the crucial inquiry is the same: does the FDLE have a rational basis for this policy?[9] This Court finds that it does, and Farmer's claims fail as a matter of law under the "highly deferential" rational basis review standard. *Williams*, 240 F.3d at 948.[10]

The FDLE asserts several bases that it argues rationally support its policy: (1) the policy maintains the completeness of the sex offender registry by keeping all offenders in the registry rather than relying on them to comply with registration requirements in

---

[9] Farmer frequently mentions that the FDLE's action is not authorized by §943.0435 since he is an out-of-state resident, but this distracts from his claim. Counts I and III allege that the FDLE's refusal to remove him from the sex offender registry denied him substantive due process and equal protection; that is the issue this Court will address.

[10] Because Farmer's claims fail on this ground, this Court need not address any of the parties' other arguments.

the future; (2) it assists law enforcement as an investigative tool to identify or rule out offenders; (3) it provides officers with information about persons with whom they come into contact, and knowing a person's sex offender status may be of assistance in assessing a situation; (4) it helps victims identify offenders and keep track of them in order to avoid future contact; (5) it informs persons, such as travelers, neighbors, and concerned citizens, who may come into contact with a sex offender about his sex offender history; (6) it supplies potential employers with information for background checks; (7) it maintains public safety by being part of a national sex offender registry and website; (8) promotes the public's right to public records. At least some of these reasons meet the low threshold required for a legislative act to be upheld as "rational" under the Constitution.

For example, maintaining a permanent database of all registered sex offenders is rationally related to aiding victims, concerned citizens, potential employers, and law enforcement officers in their efforts keep track of the known whereabouts of sex offenders—a legitimate government purpose. *See Doe*, 410 F.3d at 1347 (noting that the "increased reporting requirements" for sex offenders are "rationally related to the state's interest in protecting its

citizens from criminal activity"). This may prove especially important where, as in this case, the offender moves out of the country, as a citizen may not have access to the offender's known out-of-country address if the FDLE purged its website of offenders who had left the state.

The FDLE's actions also provide a continuing benefit to concerned citizens in Florida who may come into contact with Farmer and inquire about his sex offender status. It would be rational to think—even, as Farmer points out, in the absence of corroborative empirical evidence—that individuals who were once residents of Florida would be likely to return to Florida in the future and interact with other Florida citizens. Indeed, Farmer admits that he has visited Florida on several occasions since he ceased being a Florida resident. *See* ECF No. 32-5, at 4–5. Making sex offender registration information readily available to concerned citizens who come into contact with Farmer during his travels in Florida would, again, rationally promote the legitimate state interest of "protecting its citizens from criminal activity." *Doe*, 410 F.3d at 1347. And given that the FDLE could rationally believe that people like Farmer who once had to register in Florida are more likely to return here than sex offenders who have never had to register in

Florida, it makes sense for the FDLE to treat these two groups differently.

Likewise, the policy of permanently maintaining all registered offenders on the website is rationally related to the legitimate public purpose of making public records widely available and easily accessible. Even though there may be other, less intrusive means of making the records available, it is rational to believe that maintaining the records on a dedicated sex offender registry website will make them readily and easily accessible.

Farmer argues that the FDLE's justifications are undermined by the fact that he is no longer required to register in Florida, and his information is outdated and not useful to current website visitors. That may be the case, but maintaining the information on the website is still rationally related to the goal of providing a complete historical record of sex offenders that have registered in Florida, so that it be part of a national effort to close loopholes and track sex offenders. *Cf.* 42 U.S.C. §16901 *et seq*. And it is rational to believe that maintaining *some* record of sex offenders, even an outdated one, is more helpful to victims, concerned citizens, potential employers, and law enforcement agencies than *no* record. Indeed, the Department of Justice's website indexes sex

14

offenders registered in any state with the websites of all states in which they have registered; were a state to purge its website, the national record could become incomplete, making it difficult for a victim or concerned citizen to track and identify sex offenders. *See* ECF No. 32-3, at 9–10.[11]

Because there is at least one rational basis for the FDLE's policy, Farmer's substantive due process and equal protection claims fail as a matter of law. The FDLE's motion for summary judgment is granted, and Farmer's motion is denied, as to Counts I and III.

### III

Count II of the Complaint alleges that the FDLE's actions violated Farmer's procedural due process rights. The FDLE argued in its motion for summary judgment, ECF No. 31, that Count II fails as a matter of law, and Farmer did not address Count II in his response, ECF No. 35.[12] Additionally, Farmer did not address

---

[11] This Court was quickly able to locate the Department of Justice's website, input "Richard Farmer" into the search database, and access Farmer's registry information on both the Florida and Alabama websites. *United States Department of Justice National Sex Offender Public Website*, https://www.nsopw.gov/en/Search; Fed. R. Evid. 201.

[12] Farmer appears to conflate substantive and procedural due process in his response, but he does not specifically address any of the FDLE's arguments relating to procedural due process.

Count II in his own motion for summary judgment, ECF No. 30, except to note that "Count II . . . would only have application were FDLE to take the position that its refusal to remove [him] from the Florida registry and FDLE website was fact specific to [him]. FDLE does not take that position." The only meaningful discussion Farmer makes of Count II is in his reply to the FDLE's response to his motion, ECF No. 38, which incorporates by reference his arguments from his response to the motion to dismiss, ECF No. 9. The gist of Farmer's argument is that continued listing on the registry implicates a liberty interest, and that upon moving out of the state he should have had an opportunity for a hearing at which "the State [would have had to] demonstrate a factual basis supporting a legitimate state interest for life registration of a non-resident." ECF No. 9, at 12.

Given that the FDLE has taken the position that its decision with respect to Farmer did not turn on his specific circumstances, but was rather a straightforward administration of a policy, it would appear that Farmer's procedural due process claim is doomed. The FDLE has decided that people should remain listed

on the registry and the website even after they leave the state, and Farmer does not contend that he was denied an opportunity to prove that he meets one of the statutory conditions for de-listing. But assuming for the moment that the FDLE *did* make a fact-specific determination as to Farmer, his procedural due process claim still fails.

In order to establish a procedural due process violation, a plaintiff must establish (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Matthews v. Town of Autaugaville*, 574 F. Supp. 2d 1237, 1242 (M.D. Ala. 2008) (citing *Foxy Lady, Inc. v. City of Atlanta,* 347 F.3d 1232, 1236 (11th Cir.2003)). Even assuming that the first two prongs are satisfied, Farmer wholly fails to allege or show any facts suggesting that he was not afforded constitutionally adequate process concerning the FDLE's decision not to remove him from the registry and website. Rather, the record suggests that after Farmer sent a letter asking the FDLE to remove him from the website, the FDLE thoroughly considered his request before making a decision to deny it, laying out and later clarifying its reasons for doing so. *See* ECF No. 33-2, at 6–9.

17

Farmer does not argue or allege or otherwise suggest that this process was not constitutionally adequate. *See Cotton v. Jackson*, 216 F.3d 1328, 1330–31 (11th Cir. 2000) ("[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under Section 1983 arise. . . . [Courts] look to whether the available state procedures were adequate to correct the alleged procedural deficiencies.") (citations and quotations omitted).

Furthermore, there's not even a deprivation of a liberty interest here that would require a hearing. It is true that in some cases, changed circumstances can turn what appears to be a continuing deprivation into an entirely new deprivation, triggering the need for more process. *See, e.g.*, *Walters v. Wolf*, 660 F.3d 307, 315 (8th Cir. 2011) (plaintiff entitled to hearing based on defendants' "refusal to return [his] handgun and ammunition after [a court] dismissed the unlawful-use-of-a-weapon charge . . ., or sometime thereafter when authorities deactivated the . . . warrant for [his] arrest"). But in those cases, the circumstances have so changed that the legal basis for the initial deprivation no longer exists. That is not the case here—it's not as if Farmer has been exonerated.

Farmer's complaint is really that the FDLE lacked a rational basis for its decision. *See* ECF No. 1 ¶ 31. But whether an action has a rational basis is irrelevant to a procedural due process inquiry, and in any event, for the reasons already explained, the FDLE *did* have a rational basis for its decision.

The FDLE's motion is therefore granted, and Farmer's motion is denied, as to Count II.

IV

Rational basis review is a "highly deferential" standard. *Williams*, 240 F.3d at 948. The government needs only point to "any reasonably conceivable state of facts that could provide a rational basis" in order for its decision to be upheld. *Doe*, 410 F.3d at 1337 (citations and quotations omitted). Laws that are "unwise," not "sensible," and based on "tenuous" rationales routinely survive review. *Cook*, 792 F.3d at 300 (citations and quotations omitted). So do laws that are "unfair." *See Cook v. Stewart*, 28 F. Supp. 3d 1207, 1215 (N.D. Fla. 2014).

This Court was not asked to decide whether the FDLE's refusal to remove Farmer's information from its sex offender registry and website even after he left the state was wise, or fair, or soundly reasoned, or good public policy. It was only asked to decide whether

it was rationally related to at least one conceivable legitimate government purpose. For the reasons stated, this Court finds that is was, and that the FDLE did not violate Farmer's rights to due process or equal protection.

Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 30, is **DENIED.**

2. Defendants Swearingen and Florida Department of Law Enforcement's Motion for Summary Judgment, ECF No. 31, is **GRANTED**.

3. Defendants Richard L. Swearingen and Florida Department of Law Enforcement's Motion to Dismiss Complaint, ECF No. 7, to the extent that it was not addressed in this Court's March 15, 2016, Order, ECF No. 37, is **DENIED AS MOOT.**

4. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff, stating "Plaintiff's claims are dismissed with prejudice."

5.  The Clerk must close the file.

**SO ORDERED on July 6, 2016.**

> **s/Mark E. Walker**
> **United States District Judge**